**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 18-cv-0051-WJM-SKC
*Consolidated with Civil Action No. 18-cv-2000-WJM-SKC*

TODD COPE,

      Plaintiff,

v.

AUTO-OWNERS INSURANCE COMPANY,

      Defendant.

---

KENNETH MERRITT and
CHRISTY MERRITT,

      Plaintiffs,

v.

AUTO-OWNERS INSURANCE COMPANY,

      Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION TO DISQUALIFY AND
GRANTING DEFENDANT'S MOTION TO STRIKE**

---

      Plaintiffs Todd Cope, Kenneth Merritt, and Christy Merritt (together, "Plaintiffs")

were injured in November 2013 when their vehicle was rear-ended by a vehicle driven

by nonparty Jack Landgraf. Plaintiffs settled with Landgraf's insurance carriers and

then made a claim against Defendant Auto-Owners Insurance Company ("Auto-

Owners") for underinsured motorist ("UIM") coverage. Auto-Owners has not paid UIM

benefits, prompting this lawsuit.

Currently before the Court is Auto-Owners' "Motion to Disqualify Anthony Gary Bell from Serving as Trial Counsel Because He Is a Necessary Witness" ("Motion to Disqualify"). (ECF No. 94.) Mr. Bell is counsel for Kenneth and Christy Merritt ("Merritts"), but not Todd Cope.

Also before the Court is Auto Owners' "Motion to Strike Improper Exhibits in Plaintiffs' Response to Auto-Owners['] Motion to Disqualify Anthony Gary Bell from Serving as Trial Counsel" ("Motion to Strike"). (ECF No. 123.)

For the reasons explained below, the Motion to Disqualify is denied and the Motion to Strike is granted.

## I. LEGAL STANDARD

"A motion to disqualify counsel is addressed to the sound discretion of the district court." *World Youth Day, Inc. v. Famous Artists Merch. Exch., Inc.*, 866 F. Supp. 1297, 1301 (D. Colo. 1994). The moving party bears "the burden to establish the grounds for disqualification." *Id.* at 1299. With exceptions not relevant here, the United States District Court for the District of Colorado has adopted the Colorado Rules of Professional Conduct ("Colo. RPC") to govern attorney conduct in this District. *See* D.C.COLO.LAttyR 2(a).

## II. BACKGROUND

Colorado Revised Statute § 10-3-1115(1)(a) states, "A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Colorado Revised Statute § 10-3-1116(1) states that an insured who suffers an unreasonable delay or denial "may bring an action in a district court to recover reasonable attorney fees and court costs

and two times the covered benefit." Plaintiffs each bring unreasonable delay/denial claims, among others, against Auto-Owners. (*See* ECF No. 62 ¶¶ 170–78; ECF No. 99 ¶¶ 67–70.)

For reasons the Court will explain in further detail below (Part III.B.1), Auto-Owners asserts that Mr. Bell's interactions with Auto-Owners in the build-up to this lawsuit make him a necessary witness in the Merritts' unreasonable delay/denial claim, or at least in Auto-Owners' defenses to that claim. That is the basis of Auto-Owners' Motion to Disqualify (ECF No. 94), which the Merritts oppose (ECF No. 115), and about which Cope takes no position (*see* ECF No. 94 at 2).

Approximately two months after the Motion to Disqualify became ripe, the Court *sua sponte* issued an order for further briefing "on an issue neither party has raised, but that should be considered in the same context." (ECF No. 154.) The Court pointed the parties to a recent Colorado Supreme Court decision that, in light of existing Tenth Circuit authority, "raise[d] an important question: Must a plaintiff seeking recovery under § 10-3-1116(1) be prepared to prove its attorneys' fees, including the reasonableness of those fees, in its case-in-chief? If so, would this require the plaintiff's counsel to testify regarding those fees?" (*Id.*) Auto-Owners filed a brief arguing that these questions should be answered in the affirmative. (ECF No. 166.) Cope and the Merritts each filed a brief arguing the opposite. (ECF Nos. 165, 167.)

In the midst of this briefing, a dispute was playing out regarding whether Mr. Bell had fabricated a CM/ECF electronic filing receipt in an attempt to show that he had timely filed a brief regarding a discovery dispute. (*See* ECF Nos. 178, 181.) The

dispute prompted an investigation by this Court's Committee on Conduct.[1]  Eventually

an attorney representing Mr. Bell in the Committee on Conduct investigation informed

Auto-Owners' counsel that the electronic filing receipt in question was, indeed, "false,"

and had been "created by a staff member at [Mr. Bell's firm] without [Mr. Bell's]

knowledge."  (ECF No. 177-1 at 2.)  This prompted Auto-Owners to issue a letter

formally denying the Merritts' UIM claim under policy provisions regarding

noncooperation and fraud.  (ECF No. 177-2.)  Auto-Owners also filed a "Notice of

Supplemental Facts" with this Court, stating that Mr. Bell was now an even more

important witness in light of Auto-Owners' new claim that the falsified filing receipt

voided their coverage.  (ECF No. 177.)

### III.  ANALYSIS

Colo. RPC 3.7(a) provides:

> A lawyer shall not act as advocate at a trial in which the
> lawyer is likely to be a necessary witness unless:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal
> services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial
> hardship on the client.

Auto-Owners argues that Mr. Bell is likely to be a necessary witness within the meaning

of this rule.  The Court's order for further briefing raises the possibility that other

attorneys representing Cope or the Merritts might be necessary witnesses.  Cope's and

the Merritts' briefs argue that no attorney will be a necessary witness, or, alternatively,

---

[1] Normally, the existence of a Committee on Conduct investigation is a confidential matter.  However, several public filings in this case, including filings by Mr. Bell's firm, have disclosed the investigation.  (*See* ECF No. 177-1 at 2; ECF No. 181 at 6–7.)

exceptions (2) and/or (3) apply.

The Court will first address whether the unreasonable delay/denial claim requires a jury to decide the amount of fees and costs to be awarded to a successful plaintiff, thus potentially making Plaintiffs' lawyers necessary trial witnesses regarding their fees. The Court will then address whether Mr. Bell is a necessary witness in light of his role in developing the Merritts' unreasonable delay/denial claim and/or his connection to the fabricated filing receipt.

**A.    Whether a Jury Trial on Reasonableness of Fees is Required**

    1.    <u>The Unreasonable Delay/Denial Cause of Action</u>

In relevant part, the unreasonable delay/denial statute provides: "A first-party claimant . . . whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit."  Colo. Rev. Stat. § 10-3-1116(1).  It is clear from this language that the Colorado Legislature created a new cause of action ("may bring an action in district court to . . ."), not just an extra remedy attached to a breach-of-contract or common-law bad faith claim.

But, although unreasonable delay/denial is an independent cause of action, the uninitiated reader of the statutory language would not necessarily assume that each of the remedies provided—"reasonable attorney fees and court costs and two times the covered benefit"—qualifies as "damages," *i.e.*, the monetary relief awarded by the trier of fact as compensation for the wrong that gave rise to the lawsuit.  A lawyer with only minimal exposure to statutes with similar provisions will quickly learn that costs and attorneys' fees are almost always awarded separately from the judgment through a postjudgment summary procedure.  *See* Fed. R. Civ. P. 54(d) (fees and costs usually

claimed by motion after judgment); *see also Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Employers*, 571 U.S. 177, 179 (2014) ("Whether the claim for attorney's fees is based on a statute, a contract, or both, the pendency of a ruling on an award for fees and costs does not prevent, as a general rule, the merits judgment from becoming final for purposes of appeal.").

  2. *Estate of Casper* and "Actual Damages"

  However, the Colorado Supreme Court held in *Guarantee Trust Life Insurance Co. v. Estate of Casper*, 418 P.3d 1163, 1172 (Colo. 2018) ("*Estate of Casper*"), that "attorney fees and court costs [in § 10-3-1116(1)] . . . qualify as actual damages." Under the facts of *Estate of Casper*, this means that if a jury awards punitive damages exceeding Colorado's statutory 1:1 limit, *see* Colo. Rev. Stat. § 13-21-102(1) (punitive damages, if awarded, "shall not exceed an amount which is equal to the amount of the actual damages awarded to the injured party"), the trial court, in remitting the punitive damages award, includes the attorneys' fees portion of a § 10-3-1116(1) award when determining the limit of "actual damages," and therefore the limit of punitive damages.[2]

  *Estate of Casper*'s "actual damages" reasoning is important.  The Colorado Supreme Court treated its prior decision in *Bunnett v. Smallwood*, 793 P.2d 157 (Colo. 1990), as establishing the basic principles.  *Bunnett* was an appeal from a Colorado Court of Appeals decision holding that "the defendant was entitled to recover his

---

[2] The nature of the issue in *Estate of Casper* suggests that a plaintiff may properly request punitive damages for unreasonable delay/denial.  As this Court explained in *Residences at Olde Town Square Association v. Travelers Casualty Insurance Co.*, ___ F. Supp. 3d ___, 2019 WL 4316522 (D. Colo. Sept. 12, 2019), the propriety of punitive damages for an unreasonable delay/denial claim was implicitly assumed in *Estate of Casper*, but never actually examined.  *See id.* at *6–7.  This Court "predict[ed] that the Colorado Supreme Court, if presented with the question directly, would hold that unreasonable delay/denial is not a wrong done to the person or to personal or real property [within the meaning of the punitive damages statute], and so it may not be the basis for punitive damages."  *Id.* at *7.

attorney fees and costs where the legal proceedings were instituted in violation of an agreement not to sue." *Id.* at 158. The Colorado Supreme Court reversed, beginning its analysis as follows:

> In the absence of a statute or private contract to the contrary, attorney fees and costs generally are not recoverable by the prevailing party in a breach of contract case. Requiring each party in such cases to pay its own legal expenses is based on the well-established American rule. Numerous rationales are advanced in support of the American rule. For example, attorney fees and costs are not considered actual damages because they are not the legitimate consequences of the tort or breach of contract sued upon.

*Id.* at 160 (citations and internal quotation marks omitted). Although *Bunnett* acknowledged the unique nature of a lawsuit about a breach of a covenant not to sue, it nonetheless held that "attorney fees and costs should not be awarded for breach of a release unless (1) the agreement expressly provides that remedy, or (2) such an award is permitted by statute or court rule." *Id.* at 162.

*Estate of Casper* drew on *Bunnett* by acknowledging that, "under the American Rule, and in the absence of any contractual or statutory mandate to the contrary, attorney fees and costs [are] not 'actual damages' because they [are] 'not the legitimate consequences of the tort or breach of contract sued upon' and thus [are] not recoverable." 418 P.3d at 1172 (quoting *Bunnett*, 793 P.2d at 160). But this holding, said the court, "indicate[s] that the inverses are also true. In other words, when there is a contractual or statutory basis for the recovery of attorney fees, they are recoverable. And when that recovery is the 'legitimate consequence' of the suit, the fees and costs are deemed to be actual damages." *Id.*

The first "inverse" is self-evidently true: "when there is a contractual or statutory

basis for the recovery of attorney fees, they are recoverable."  The second "inverse" is much more problematic.  The language quoted from *Bunnett* requires attorneys' fees to be "the legitimate consequences of the tort or breach of contract sued upon" before they are recoverable as damages.  793 P.2d at 160.  The example given in *Bunnett* is an attorney suing for his or her fee.  *Id.* at 161 ("we agree that there is an exception to the American rule when the attorney fees are the subject of the lawsuit").  But this was a proper exception because breach of a fee agreement means the attorney is not receiving attorneys' fees, *id.*, and so damages in the form of attorneys' fees are "the legitimate consequence[] of the . . . breach of contract sued upon," *id.* at 160.  However, *Estate of Casper* silently modifies "legitimate consequence[] of the . . . breach of contract sued upon" to "legitimate consequence of *the suit*."  418 P.3d at 1172 (emphasis added; internal quotation marks omitted).  This shifts the focus from the injury that prompted the suit to the suit itself.

The shift matters greatly, as seen by the reasoning that immediately follows:

> Section 10-3-1116(1) provides a cause of action for the delay or denial of a covered insurance benefit without a reasonable basis.  In structuring that cause of action, the legislature included both the recovery of reasonable attorney fees and court costs and the recovery of two times the covered benefit in the same subsection, indicating that the recovery of attorney fees is, quite clearly, a "legitimate consequence" of such a suit. . . . [I]f an insured can satisfy the elements for recovery laid out in section 10-3-1115, C.R.S. (2017), they are entitled to both remedies laid out in section 10-3-1116(1): an award of attorney fees and court costs, and two times the covered benefit, both of which qualify as actual damages.

> * * *

> . . . [W]e hold that the legislature intended the recovery of attorney fees and court costs to be a legitimate consequence of a successful claim under section 10-3-1116(1).

*Id.* Here, the Colorado Supreme Court could not readily declare that attorneys' fees were a "legitimate consequence" of the underlying *breach*, *i.e.*, unreasonable delay or denial. Attorneys' fees to litigate an unreasonable delay/denial claim are no more or less a "legitimate consequence" of that breach than any other breach of a legal duty. Those fees are among the transactional costs usually required to enforce legal rights.[3] So if the Colorado Supreme Court declared that attorneys' fees awarded under an unreasonable delay/denial theory could be properly thought of as the legitimate consequence of the breach, the logical consequences would swallow the American Rule. Instead, the Colorado Supreme Court created a new category—fees that are the legitimate consequence of "the suit," or, alternatively, of "a successful claim"—and declared that the Legislature had "quite clearly" intended "reasonable attorney fees" to fall within one or both of those categories (they are not the same thing). As such, they are "actual damages." *Id.*

And this is where the problem arises, at least for federal courts. The Seventh Amendment to the U.S. Constitution says, "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." The reference to "common law" is not a reference to the traditional forms of action "which the common law recognized among its old and settled proceedings, but suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. (3 Pet.) 433, 447

---

[3] Even the fees incurred in a lawsuit to recover unpaid fees are not recoverable absent some statutory or contractual authorization. *See, e.g.*, *Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.3d 821, 837 (Tex. App. 2014).

(1830) (emphasis removed).  Damages is the quintessential legal remedy, as distinct from equitable remedies.  *See* 11A Charles Alan Wright et al., *Federal Practice & Procedure* § 2944 (3d ed., Aug. 2019 update).  The Tenth Circuit holds that, at least in certain circumstances, the Seventh Amendment jury trial right entitles a defendant to contest attorneys' fees claimed as damages before a jury.  *See J.R. Simplot v. Chevron Pipeline Co.*, 563 F.3d 1102, 1115–17 (10th Cir. 2009) (where the plaintiff claims that the defendant is responsible for the plaintiff's fees incurred litigating a previous lawsuit against a third party, the claimed fees are damages to which the Seventh Amendment jury trial right applies).

   3. <u>Effect of Fed. R. Civ. P. 54(d)(2)(A)</u>

  Conceivably the Court might be able to resolve this problem at something short of a constitutional level.  Under Federal Rule of Civil Procedure 54(d)(2)(A), "A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."  If the "substantive law" (the unreasonable delay/denial claim created by § 10-3-1116(1)) requires fees to be proved at trial as an element of damages, then the Court need not inquire whether the Seventh Amendment requires as much as well.

  *Estate of Casper* establishes that reasonable attorneys' fees are an "element of [the] damages" a plaintiff may claim under § 10-3-1116(1), but it says nothing about whether they must be "proved at trial."  However, an earlier Colorado Supreme Court decision says that "[i]f [attorneys' fees] are considered to be damages, [they] must be determined by the trier of fact and proven during the damages phase."  *Ferrell v. Glenwood Brokers, Ltd.*, 848 P.2d 936, 941 (Colo. 1993).

  Under normal circumstances, *Ferrell* would seem to settle the question.  But in

*Hall v. American Standard Insurance Co. of Wisconsin*, 292 P.3d 1196 (Colo. App. 2012), the Colorado Court of Appeals construed *Ferrell* narrowly when faced with an argument that the attorneys' fees portion of § 10-3-1116(1) must be resolved by a jury. Anticipating *Estate of Casper*'s analysis, *Hall* said "the plain meaning of the statutory language in section 10-3-1116(1) is that the components of damages for this statutory claim are both 'reasonable attorney fees and court costs' and 'two times the covered benefit.'" *Id.* at 1200. Further anticipating *Estate of Casper*, *Hall* reasoned that "such fees and costs are a 'legitimate consequence' of bringing such an action to remedy an insurer's unreasonable conduct" (while citing cases about the legitimate consequence of the breach that led to the action, not the action itself). *Id.* But, while acknowledging *Ferrell*'s seemingly broad language that attorneys' fees must be determined by the trier of fact at the damages phase if the attorneys' fees are deemed to be damages, *Hall* asserted that "the General Assembly has the authority to provide for an award of attorney fees as damages and to provide for their determination by the trial court rather than by the jury, and we conclude it has done so concerning the statutory claim authorized under section 10-3-1116(1)." *Id.* at 1201 n.2.

   *Hall* does not cite anything to support this proposition, but *Hall* is correct that the Colorado Legislature is, as far as the Colorado Constitution goes, unconstrained in deciding which sorts of claims will go to a jury and which will not. The Colorado Constitution guarantees a jury trial in most criminal cases, but says that "a jury in civil cases . . . may consist of less than twelve persons, as may be prescribed by law." Colo. Const. art. II, § 23. From nearly the beginning of statehood, the Colorado Supreme Court has interpreted this to mean that the Colorado Constitution "secures the right of

trial by jury in criminal cases, but imposes no restriction upon the legislature in respect to the trial of civil causes." *Huston v. Wadsworth*, 5 Colo. 213, 216 (1880).

Moreover, Colorado is not bound by the Seventh Amendment civil jury trial right. The U.S. Supreme Court held in *Minneapolis & St. Louis Railroad Company v. Bombolis*, 241 U.S. 211, 217 (1916), that "the 7th Amendment applies only to proceedings in courts of the United States, and does not in any manner whatever govern or regulate trials by jury in state courts." The Supreme Court has never since revisited that holding. *See McDonald v. City of Chicago*, 561 U.S. 742, 765 n.13 (2010) (listing the Seventh Amendment jury trial right among the few protections in the Bill of Rights that the Supreme Court has not incorporated against the states).

So, *Hall* is correct that "the General Assembly has the authority to provide for an award of attorney fees as damages and to provide for their determination by the trial court rather than by the jury." 292 P.3d at 1201 n.2. As for *Hall*'s final conclusion that "the General Assembly . . . has done so concerning the statutory claim authorized under section 10-3-1116(1)," *id.*, Hall cites nothing in support.

"This court must determine issues of state law as [it] believe[s] the highest state court would decide them." *Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1240 (10th Cir. 2003). Although an intermediate appellate court's rulings on state law should normally be followed in the absence of state supreme court authority, this Court may disregard an intermediate court of appeals's holding if it "is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. AT&T Co.*, 311 U.S. 223, 237 (1940). Here, if "persuasive data" exists, it is the language from *Ferrell* that *Hall* attempts to evade, *i.e.*, "[i]f [attorneys' fees] are

considered to be damages, [they] must be determined by the trier of fact and proven during the damages phase." *Ferrell*, 848 P.2d at 941.

On the one hand, *Ferrell* says what it says, and *Hall* disregards it—implicitly reasoning that the Colorado Supreme Court meant something narrower than what it said. On the other hand, *Estate of Casper* and *Hall* are so close in their reasoning that one suspects the Colorado Supreme Court had *Hall* favorably in mind when deciding *Estate of Casper*. Moreover, once one concludes that the Colorado Legislature intended the attorneys' fees remedy in § 10-3-1116(1) to be "damages," not traditional prevailing party fees, one could also easily conclude that the Colorado Legislature never intended the fees-as-damages remedy to make the plaintiff's claim *harder* by requiring the plaintiff to prove the reasonableness of those fees during the damages phase of trial. So there is a fair reason to suspect that the Colorado Supreme Court, if faced with the question directly, would endorse *Hall*'s revision of *Ferrell*. On yet a third hand, however, there is reason to question whether this Court is authorized to predict that otherwise on-point state supreme court language would be modified or overruled if the state supreme court were to take it up again. *See 656 Logan St. Condo. Ass'n, Inc. v. Owners Ins. Co.*, 389 F. Supp. 3d 946, 954–55 (D. Colo. 2019).

In these unusual circumstances, the Court finds it most prudent to assume without deciding that the Colorado Supreme Court would follow *Hall* and narrow *Ferrell*.[4] Under that assumption, "the substantive law" of § 10-3-1116(1) does not require that

---

[4] A recent decision from this District—not involving unreasonable delay/denial—treats the relevant language from *Ferrell* as unquestioned and controlling. *Sonrisa Holding, LLC v. Circle K Stores, Inc.*, 2019 WL 2471370, at *10 (D. Colo. June 12, 2019). Because the Court assumes without deciding that *Hall* correctly limited *Ferrell*, the undersigned finds this decision inapposite.

"fees to be proved *at trial* as an element of damages." Fed. R. Civ. P. 54(d)(2)(A) (emphasis added). Thus, the Court must address the Seventh Amendment question directly.[5]

### 4. Seventh Amendment Three-Factor Test

Colorado's (assumed) decision to exempt from jury trial any attorneys' fees and costs awarded as damages under § 10-3-1116(1) does not bind federal courts:

> [T]he right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions. . . . In diversity cases, of course, the substantive dimension of the claim asserted finds its source in state law, but the characterization of that state-created claim as legal or equitable for purposes of whether a right to jury trial is indicated must be made by recourse to federal law.

*Simler v. Conner*, 372 U.S. 221, 222 (1963) (citations omitted). Nonetheless, "[t]he Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action." *Ross v. Bernhard*, 396 U.S. 531, 538 (1970).

Here, if tried, the issue would be the reasonableness of the plaintiff's attorneys' fees (and costs, presumably) incurred in the action being tried (as opposed to incurred in a previous action, *see J.R. Simplot*, 563 F.3d at 1115–17). The inquiry would be limited to reasonableness because "the award of attorney fees and court costs in such a claim is not discretionary." *Estate of Casper*, 418 P.3d at 1172. Thus, assuming the jury finds an unreasonable delay or denial, the jury may not decide *whether* the plaintiff deserves fees and costs, but only *the amount* of those fees and costs, and § 10-3-

---

[5] One decision from this District holds that the unavailability of a trial on attorneys' fees was settled by *Hall*, and that decision "controls" in federal court. *Bagher v. Auto-Owners Ins. Co.*, 2015 WL 1475104, at *2 (D. Colo. Mar. 27, 2015). For the reasons explained in the next subsection (Part III.A.4), this reasoning is incorrect. The availability of a civil jury trial in federal court is a matter of federal law, even on a state-law claim.

1116(1) says the amount must be "reasonable."

In that light, the Court turns to the U.S. Supreme Court's three-factor test for determining whether an issue falls within the Seventh Amendment's civil jury trial guarantee: "[T]he 'legal' nature of an issue is determined by considering, *first*, the pre-merger custom [*i.e.*, before the merger of law and equity] with reference to such questions; *second*, the remedy sought; and, *third*, the practical abilities and limitations of juries." *Ross*, 396 U.S. at 538 n.10 (emphasis added). The Court will discuss the first two factors together, and the third factor separately.

a. *Pre-Merger Custom & Remedy Sought*

Although *Estate of Casper* says that the fees and costs available under § 10-3-1116(1) are "actual damages," most everything about the Colorado Supreme Court's reasoning is much more sensibly understood if one views the remedy as a prevailing party award with special treatment when calculating the punitive damages limit.[6] In other words, odd language such as "legitimate consequence of [the] suit" or "legitimate consequence of the successful claim under section 10-3-1116(1)," *Estate of Casper*, 418 P.3d at 1172, as opposed to a legitimate consequence of the underlying injury, becomes unproblematic if one understands it to be roundabout way of saying that the Legislature intended the prevailing party to recover its fees—a fairly unremarkable proposition.

Thus, the character of the right as expounded by in *Estate of Casper* is in the

---

[6] "'[A]ctual damages' is a term of art in the exemplary damages statute. In the context of calculating the maximum amount of exemplary damages, it means 'compensatory damages after reduction for comparative negligence and pro rata liability.'" *Residences at Olde Town Square*, ___ F. Supp. 3d at ___, 2019 WL 4316522, at *7 n.6 (quoting *Lira v. Davis*, 832 P.2d 240, 246 (Colo. 1992)).

nature a prevailing party award.  The overwhelming tradition in this country, both before and since the merger of law and equity, is to adjudicate the reasonableness of fees (if available at all) in post-verdict or post-judgment proceedings.[7]  Thus, this factor weighs against treating the fees and costs available under § 10-3-1116(1) as "legal."

       b.    *The Practical Abilities and Limitations of Juries*

Some courts say that juries are ill-equipped, compared to judges, to determine the reasonableness of attorneys' fees.  *See, e.g.*, *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1316 (2d Cir. 1993) ("if the parties submitted evidence of the amount of attorneys' fees to a jury at trial, the time spent acculturating the jury to the mysteries of attorneys' hourly rates and incidental charges, and cross-examining about those matters, would likely increase fees and generate inconsistent awards").  This Court generally agrees, but the Court is hesitant to say that this is a reason counseling against giving the reasonableness question to the jury.

First, in the case of fees incurred in a first lawsuit claimed as damages in a second lawsuit, the Seventh Amendment already requires the jury to fix the amount of fees (with reference to reasonableness) if there is a genuine dispute of fact in that regard.  *See J.R. Simplot*, 563 F.3d at 1115–20.  Thus, juries already (albeit rarely) perform this task.

Second, juries are routinely presented with questions that require expert testimony to resolve.  Indeed, § 10-3-1116(1) requires the plaintiff to prove that the

---

[7] The Fifth Circuit has held, "Since there is no common law right to recover attorneys fees, the Seventh Amendment does not guarantee a trial by jury to determine the amount of reasonable attorneys fees."  *RTC v. Marshall*, 939 F.2d 274, 279 (5th Cir. 1991).  This Court respectfully disagrees that the conclusion necessarily follows from the premise.  The nonexistence of a certain right to recover at common law does not automatically mean it is something other than "legal" relief for purposes of the Seventh Amendment.

insurer delayed or denied payment "without a reasonable basis." Colo. Jury Instr., Civil 25:4 (4th ed., June 2019 update). In the Court's experience, this is almost always done by retaining an insurance lawyer as an expert and putting the lawyer on the stand to explain the insurance industry standards as compared to the insurer's conduct. Testimony about the reasonableness of fees would probably be more tedious, but likely not more so than other complicated economic matters that lay juries are asked to decide (*e.g.*, reasonable patent royalties, antitrust damages, etc.).

However, the Court fully agrees with the Second Circuit's explanation of the real impracticality inherent in asking a jury to fix the reasonable amount of fees in the lawsuit currently being tried:

> [A]lthough the judge can compute the amount of attorneys' fees after a trial with perfect hindsight, the jury would have to keep a running total of fees as they accrued through summations and then predict future fees from post-trial proceedings and motions. The prospect of such a trial evokes images of an attorney struggling to prove the amount of fees to which he is entitled, but never being able to do so because he must prove the value of his last words even as he speaks them, and also the value of words yet unuttered and unwritten.

*McGuire*, 1 F.3d at 1316.

This is not an insurmountable problem. As Auto-Owners points out, this is not so different from when "a plaintiff continues to incur medical costs throughout litigation," (ECF No. 166 at 4), and it would not be the first time a jury was asked to estimate a reasonable amount of likely future damages. Nonetheless, it counsels against deeming the fees and costs available under § 10-3-1116(1) to be "legal."

c.    *Synthesis*

The Court finds that "the nature of the issue to be tried," *Ross*, 396 U.S. at 538—

namely, the reasonableness of fees and costs in the lawsuit currently being tried, as available under § 10-3-1116(1)—is not "legal" within the meaning of the Seventh Amendment's civil jury trial guarantee, and as a consequence the guarantee does not apply to the resolution of this issue. As such, the Court need not inquire what effect the opposite ruling might have on a plaintiff's attorney's ability to represent the plaintiff at trial and yet also be a witness regarding his or her fees.[8]

## B.     Whether Mr. Bell Should Be Disqualified

The Court turns now to the more specific issue of whether Mr. Bell should be disqualified for his alleged actions relating to the Merritts' unreasonable delay/denial claim. Auto-Owners seeks to disqualify only Mr. Bell, not his co-counsel or his firm. (See ECF No. 94 at 15.)

### 1.     The Parties' Competing Positions

As previously noted, the auto accident that eventually prompted this lawsuit happened in November 2013. Auto-Owners says that the Merritts retained Mr. Bell shortly afterward and that Mr. Bell was Auto-Owners' primary point of contact on the Merritts' claim since January 2014. (ECF No. 94 at 3.) Auto-Owners further alleges that, for the next three years, Mr. Bell repeatedly obstructed Auto-Owners' requests for information (about, *e.g.*, Landgraf's policy limits, the Merritts' medical condition, etc.). (*Id.* at 3–4.) Then, in January 2017, Mr. Bell began accusing Auto-Owners of failing to respond to his inquiries, and further "implied that Auto-Owners had not actually sent its many letters to him." (*Id.* at 4.) When Auto-Owners "finally received certain medical

---

[8] Colo. RPC 3.7(a)(2) permits attorney testimony about "the nature and value of legal services rendered in the case." But it is far from clear that this exception was crafted with the idea in mind of proving fees as damages in the case-in-chief, as opposed to supporting a fee petition after judgment, or a lawsuit specifically to recover unpaid legal fees.

information for the Merritts," it learned that Mr. Bell had referred the Merritts "to at least three medical providers, including a neuropsychologist, and [*sic*] neurologist, and pain-medicine doctor." (*Id.*)

Given that Auto-Owners intends to present a case that any allegedly unreasonable conduct was attributable to Mr. Bell's obstruction, Auto-Owners says "[i]t is unavoidable that Auto-Owners will be cross-examined [by Mr. Bell] at deposition and trial regarding," *e.g.*, "Mr. Bell's (untrue) assertions in his correspondence that Auto-Owners (not him) failed to communicate" or "the impact on the UIM claims of Mr. Bell's failure to provide information." (*Id.* at 8.) As for medical referrals, Auto-Owners asserts that

> Mr. Bell's reasons why he was referring his clients to certain medical care, why he chose those specific doctors, whether he has a prior relationship with those doctors, and any other pertinent questions regarding his medical referrals are relevant and material to whether Auto-Owners was reasonable in questioning the Merritts' damages because its cost may have been inflated.

(*Id.* at 9 (internal quotation marks omitted).)[9]

The Merritts respond that "[t]he only Bad Faith[10] [they] are asserting for the time period prior to 2017 is the failure to, and refusal to, provide the insurance policy(s)."

---

[9] Auto-Owners suggests that Mr. Bell may refer clients to doctors who charge more than is reasonable, in turn inflating the total pot of damages on which Mr. Bell might earn a contingency fee. (*See id.* at 4–5.)

[10] Unlike a claim for common-law bad faith breach of insurance contract, a statutory unreasonable delay/denial claim does not require a showing of bad faith, but only that the "insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." Colo. Rev. Stat. § 10-3-1115(2). When the Merritts say "Bad Faith," the Court presumes they are thinking of their common law and statutory claims together, under the assumption that bad faith conduct is also unreasonable conduct. *Cf. Am. Family Mut. Ins. Co. v. Hansen*, 2016 CO 46, ¶ 1, 375 P.3d 115, 116 (Colo. 2016) (colloquially referring to an unreasonable delay/denial claim as "statutory bad faith").

(ECF No. 115 at 5.)[11]  Thus, the correspondence (or lack thereof) between Mr. Bell and Auto-Owners from 2014 to 2017 is "irrelevant and immaterial."  (*Id.*)  As to Mr. Bell's referrals to medical providers, the Merritts accuse Auto-Owners of "speculation and conjecture."  (*Id.* at 10.)  The Merritts also generally accuse Auto-Owners' counsel's law firm of repeatedly and improperly using disqualification motions "as a strategy and a weapon" in unreasonable delay/denial cases.  (*Id.* at 3, 8–9, 14–15.)  And the Merritts say that Auto-Owners waited too long to bring the Motion to Disqualify.  (*Id.* at 13–14.)  Finally, the Merritts attach as an exhibit a separate 21-page point-by-point "response" to Auto-Owners' accusations regarding Mr. Bell's alleged obstruction.  (ECF No. 115-5 at 2–22.)  This response is unsigned, but presumably it was prepared by Mr. Bell because it seems to reflect his personal knowledge of communications with Auto-Owners.

In reply, Auto-Owners says that the separate "response" exhibit only illustrates the necessity of Mr. Bell's testimony.  (ECF No. 124 at 7–8.)[12]  As for the Merritts' choice to limit the pre-2017 factual basis of their unreasonable delay/denial claim to Auto-Owners' alleged failure to produce a copy of the policy, Auto-Owners highlights its "defense of non-cooperation" which could potentially "void all coverage."  (*Id.* at 6.)  Auto-Owners does not explicitly say so, but apparently it means to assert that its pre-2017 communications with Mr. Bell are part of its non-cooperation defense regardless of whether the Merritts intend to raise those communications as a basis for their unreasonable delay/denial claim.  As for untimeliness, Auto-Owners counters that its

_____

[11] The Court has been pointed to nothing in the record further elaborating on this accusation about refusal to provide insurance policies.

[12] Auto-Owners elsewhere alleges that "Mr. Bell chose not to [frame the response exhibit as a sworn declaration] because, by doing so, he would have conceded the fact that he is a necessary witness in this case."  (ECF No. 123 at 3.)

motion was timely in light of the circumstances of this case. (*Id.* at 11–12.)

Lastly, the Court notes Auto-Owners' later supplement, stating that Mr. Bell's employee's fabrication of an electronic filing receipt is deemed by Auto-Owners to be an independent basis for denying coverage. (ECF No. 177.) Auto-Owners relies on provisions of the relevant insurance policy that excuse it from paying "for any loss or damage" when there has been "[c]oncealment or misrepresentation of a material fact" or "[f]raud" committed by an insured "at any time relating to the coverage under this policy." (ECF No. 177-2 at 3.) Auto-Owners also invokes a provision requiring persons seeking coverage under the policy to "cooperate with [Auto-Owners] in the investigation, settlement or defense of any claim or suit," including by giving Auto-Owners "access to any documents [it] request[s]." (*Id.*) Auto-Owners says that the latter provision applies because "creating a false court filing receipt has the effect of obstructing discovery . . . needed for Claim investigation." (*Id.* at 8.)

2.  Resolution

a.  *Timeliness*

"[D]isqualification motions must be diligently pursued to avoid waiver . . . ." *Smith v. Whatcott*, 757 F.2d 1098, 1100 (10th Cir. 1985), *superseded by rule on other grounds as stated in SLC Ltd. V v. Bradford Grp. W., Inc.*, 999 F.2d 464, 466 (10th Cir. 1993). As to Auto-Owners' Motion to Disqualify, the relevant timeline is as follows.

The Merritts filed their original complaint in state court in July 2018. (*See* Civil Action No. 18-cv-2000 (D. Colo.), ECF No. 1-1.) Auto-Owners removed the case to this Court in August 2018. (*Id.*, ECF No. 1.) Shortly afterward, Auto-Owners moved in Cope's lawsuit to consolidate it with the Merritts' lawsuit. (ECF No. 47.) While that motion was pending, the Merritts and Auto-Owners attended a scheduling conference

and began discovery. (Civil Action No. 18-cv-2000 (D. Colo.), ECF Nos. 24–26.) The Court granted the motion to consolidate on January 7, 2019, consolidating the Merritts' lawsuit into Cope's lawsuit. (ECF No. 61.) Auto-Owners says it "raised [with Mr. Bell] the issue of [him] being a necessary witness" on February 5, 2019. (ECF No. 124 at 11; see also ECF No. 121-1 at 2.) Then followed "three months attempting to confer with Mr. Bell on this issue to reach a resolution without the Court's involvement." (ECF No. 124 at 11.) Auto-Owners filed its Motion to Disqualify on May 6, 2019. (ECF No. 94.)

According to Auto-Owners, it diligently pursued disqualification because it first raised the issue with Mr. Bell fairly soon after this Court granted the motion to consolidate. (ECF No. 124 at 11.) Auto-Owners does not explain why consolidation is the relevant starting point of the timeliness analysis. Auto-Owners appears to have understood the basis for disqualification from the outset of the state court lawsuit in July 2018. Accordingly, there is a serious question of untimeliness.

The Court need not reach the untimeliness question, however, due to unique intervening circumstances. Assuming without deciding that it is a viable theory, Auto-Owners's claim that the Merritts forfeited coverage through the misrepresentation, fraud, or non-cooperation supposedly evident in the falsified filing receipt presents a different timeliness analysis. Further assuming without deciding that Mr. Bell would likely become a witness at trial as to that theory, Auto-Owners timely asserted this as a basis for disqualification because it did so shortly after learning from Mr. Bell's counsel in the Committee on Conduct investigation that the filing receipt was admittedly forged. Thus, because the Court will need to reach at least that much of the disqualification analysis,

the Court in its discretion will reach the remainder of the analysis, regardless of timeliness.

      b.    *Likelihood that Mr. Bell Will Be a Necessary Witness, and Alternative Avenues to Obtain His Testimony*

At times Auto-Owners refers to "Mr. Bell's anticipated testimony" regarding his interactions with Auto-Owners. (ECF No. 94 at 6, 10.) But Auto-Owners never says that it intends to call Mr. Bell as a witness at trial. It may intend to *depose* him—a possibility the Court will address below. As for trial, however, Auto-Owners does not say that it plans to compel Mr. Bell to testify (as a hostile witness, obviously) in Auto-Owners' defense case. Almost certainly, Auto-Owners prefers to put on its defense case through its own witnesses, *e.g.*, its adjusters testifying about their communications with Mr. Bell, his communications in return, and the problems that Mr. Bell's behavior allegedly created. The same is likely true for Auto-Owners' more recent claim about the fabricated filing receipt.

What, then, is Mr. Bell's "anticipated testimony"? Perhaps Auto-Owners means to say that its defense case will force the Merritts to put Mr. Bell on the stand as a rebuttal witness, to counter Auto-Owners' accusations and characterizations of his conduct. But the Merritts' briefing on the Motion to Disqualify shows that they have no intention to call Mr. Bell. (*See, e.g.*, ECF No. 115 at 11 ("Plaintiff's counsel is not a necessary witness in this case.").) That may leave the Merritts without rebuttal testimony they might otherwise prefer to present, but that is their choice and the Court presumes they are prepared to live with the consequences. It is not Auto-Owners' problem. Thus, the Court has no reason to anticipate testimony from Mr. Bell.

But what about Auto-Owners' claim that its witnesses will inevitably be cross-

examined by Mr. Bell about those witnesses' characterization of Mr. Bell's communications and conduct? (*See* ECF No. 94 at 8.) This is not a question of whether Mr. Bell is "likely to be a necessary witness." Colo. RPC 3.7(a). Nonetheless, this may put Mr. Bell in an awkward situation because he would likely be tempted to slip his side of the story into the record via cross-examination questions.

The Court routinely instructs juries that lawyers' questions and objections are not evidence,[13] and the Court would be especially attentive in this situation to ensure that Mr. Bell did not use any cross-examination improperly. So, as before, this is the Merritts' problem, not Auto-Owners'. Auto-Owners is free to propose a jury instruction specific to the circumstances if it feels one would be necessary or helpful.

The next question relates to the Merritts' intent to argue that the pre-2017 factual basis for their unreasonable delay/denial claim rests in a request—by Mr. Bell, presumably—to Auto-Owners for a copy of the relevant policy. Conceivably this could require Mr. Bell's testimony. But Auto-Owners offers no reason to believe that it has a good faith basis for disputing that it received such a request. The Court therefore trusts that the parties can reach a stipulation about how to present this fact to the jury.[14]

Finally, the Court turns to the question of deposing Mr. Bell. It appears that the

---

[13] The undersigned always gives the jury Tenth Circuit Criminal Pattern Jury Instruction 1.06, even in civil cases.

[14] If it turns out that Auto-Owners indeed has a *genuine, good faith* basis to dispute that it received a request from Mr. Bell to produce the relevant policy, Auto-Owners may bring that to the Court's attention through an appropriate motion. The Court can then focus on that dispute specifically. Without prejudging the issue, the Court observes that it would be a rare case where a dispute of this relatively minor magnitude would justify an attorney's total disqualification. The Court agrees with the Colorado Supreme Court that "disqualification of a party's chosen attorney is an extreme remedy" and should not be granted without ruling out reasonable remedies "short of disqualification." *In re Estate of Myers*, 130 P.3d 1023, 1027 (Colo. 2006).

primary topic in any such deposition would be Mr. Bell's alleged choice to refer the Merritts to certain medical providers. The Court finds that this line of inquiry may be pursued, if at all, through witnesses other than Mr. Bell. *See World Youth Day*, 866 F. Supp. at 1302 ("a lawyer is a 'necessary' witness if his or her testimony is relevant, material and *unobtainable elsewhere*" (emphasis added)). The medical providers themselves can testify regarding how often patients come to them on Mr. Bell's referral, and regarding the rates they charge.

To the extent Auto-Owners hopes to depose Mr. Bell about any other topic, they have thus far failed to show the need for such a deposition because—as explained above—no testimony from Mr. Bell will be presented at trial.

To be clear, none of the foregoing is meant to be a ruling that any of the parties' theories are legally or factually supportable, or that any particular evidence is discoverable, relevant, or admissible. The Court rules, rather, that even if all theories and evidence described above will be sought in discovery or presented to a jury, none of it/them require(s) Mr. Bell's disqualification on this record.

## IV. MOTION TO STRIKE

Auto-Owners' Motion to Strike rests on the premise that the 21-page "response" exhibit (ECF No. 115-5) mentioned previously, and a "timeline" attached as exhibit to the Merritts' response to the Motion to Disqualify (ECF No. 115-3),[15] are both an evasion of the undersigned's page limitations for motions and related briefing. *See* WJM Revised Practice Standard III.C.1. The point is well-taken and the challenged documents will be stricken. The Court further notes that, in any event, it did not rely on

---

[15] This document is not a legitimate timeline. It is a textual narrative of certain events, in chronological order, with each event separated by a hard return.

either document in formulating its decision on the Motion to Disqualify.

## V. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Auto-Owners' "Motion to Disqualify Anthony Gary Bell from Serving as Trial Counsel Because He Is a Necessary Witness" (ECF No. 94) is DENIED;

2. Auto-Owners' "Motion to Strike Improper Exhibits in Plaintiffs' Response to Auto-Owners['] Motion to Disqualify Anthony Gary Bell from Serving as Trial Counsel" (ECF No. 123) is GRANTED;

3. ECF Nos. 115-3 and 115-5 are STRICKEN; and

4. Auto-Owners' "Motion to Stay Discovery Pending Court's Ruling on its Motion to Disqualify Anthony Gary Bell" (ECF No. 121) is DENIED AS MOOT.

Dated this 31st day of January, 2020.

BY THE COURT:

William J. Martinez
United States District Judge