IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-0051-WJM-SKC

TODD COPE,

    Plaintiff,

v.

AUTO-OWNERS INSURANCE COMPANY,

    Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S OMNIBUS MOTION TO EXCLUDE OPINIONS OF CERTAIN OF PLAINTIFF'S EXPERT WITNESSES**

---

    This lawsuit, which arises out of a motor vehicle accident that occurred on November 6, 2013, is before the Court on Defendant Auto-Owners Insurance Company's Omnibus Motion to Exclude Opinions of Certain of Plaintiff's Expert Witnesses ("Motion") (ECF No. 335.)  Plaintiff Todd Cope filed a response in opposition (ECF No. 357), to which Defendant filed a reply (ECF No. 366).

    Neither party requests an evidentiary hearing on the Motion, and the Court finds it does not need one to resolve the Motion.  For the following reasons, the Motion is granted in part and denied in part.

## I. LEGAL STANDARDS

**A.**    **Rule 702**

    A district court must act as a "gatekeeper" in admitting or excluding expert testimony.  *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2005).

Expert opinion testimony is admissible if it is relevant and reliable. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 594–95 (1993). The opinions are relevant if they would "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702 (as amended on Dec. 1, 2023). They are reliable if (1) the expert is qualified "by knowledge, skill, experience, training, or education," (2) his opinions are "based upon sufficient facts or data," and (3) they are "the product of reliable principles and methods." *Id.* The proponent of expert testimony has the burden to show that the testimony is admissible. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

Federal Rule of Evidence 401 provides that evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.

Federal Rule of Evidence 402 provides that relevant evidence is admissible unless any of the following provides otherwise, including the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court. Further, Rule 402 provides that irrelevant evidence is not admissible.

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

**B.    Federal Rule of Civil Procedure 26**

Federal Rule of Civil Procedure 26 requires that expert disclosures "must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one

whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B).  "Ordinarily, physicians providing a party with medical treatment are designated as non-retained and, thus, are exempt from the report requirement," *Hermann v. Hartford Cas. Ins. Co.*, 2012 WL 5569769, at *3 (D. Colo. Nov. 15, 2012), because "[t]heir testimony is based upon their personal knowledge of the treatment of the patient and not information acquired from outside sources for the purpose of giving an opinion in anticipation of trial," *George v. Metro. Prop. & Cas. Ins. Co.*, 2020 WL 70424, at *1 (D. Colo. Jan. 2, 2020) (quoting *Trejo v. Franklin*, 2007 WL 2221433, at *1 (D. Colo. July 30, 2007)).  "It is the substance of the expert's testimony, not the status of the expert, which will dictate whether a Rule 26(a)(2)(B) report will be required."  *Id.* (quotations, alterations, and citations omitted).

"However, when a witness 'opines as to causation, prognosis, or future disability, the physician is going beyond what he saw and did and why he did it . . . and [is] giving an opinion formed because there is a lawsuit.'"  *Id.* (quoting *Hermann*, 2012 WL 5569769, at *3).  When a treating physician will testify beyond his or her knowledge of the care he or she provided to the patient, the witness must file a written report that contains a complete statement of the witness's opinions, the facts and data supporting such opinions, the witness's qualifications, a list of all other cases in which the witness has testified as an expert in the past four years, and a disclosure of the compensation received by the expert.  Fed. R. Civ. P. 26(a)(2)(B)(i)–(vi).

In determining whether an expert disclosure has complied with Rule 26(a)(2)(B), "[t]he party moving to strike the witness bears the initial burden of showing that the disclosing party failed to produce a written report under Rule 26(a)(2)(B)."  *Id.* (quoting

3

*Davis v. GEO Grp.*, 2012 WL 882405, at *2 (D. Colo. Mar. 15, 2012)). Once the movant has met this burden, "[t]he burden then shifts to the disclosing party to demonstrate that the witness is not retained or specially employed and, thus, no report was required." *Id.*

### C. Federal Rule of Civil Procedure 37

Under Rule 37,

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

"This sanction is mandatory unless the non-disclosing party shows substantial justification or that the failure to disclose was harmless." *See Cook v. Rockwell Int'l Corp.*, 233 F.R.D. 598, 600 (D. Colo. 2005). However, striking an expert witness based on disclosure deficiencies is a drastic sanction that can cripple a party's case. *See Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997) (recognizing that "[t]he decision to exclude evidence is a drastic sanction"); *McAdoo v. ITT Educ. Servs., Inc.*, 2011 WL 2198568, at *2 (D. Colo. June 6, 2011) ("Without a finding of bad faith or gamesmanship . . . courts are loathe to invoke the strong medicine of precluding expert testimony." (quoting *McClain v. Metabolife Int'l, Inc.*, 193 F. Supp. 2d 1252, 1259 (N.D. Ala. 2003))).

In *Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Company*, 170 F.3d 985, 993 (10th Cir. 1999), the Tenth Circuit identified four factors for courts to consider in determining whether the failure to disclose information required under Rule 26 is substantially justified or harmless: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability to cure the prejudice; (3) the potential for trial disruption; and (4) the non-disclosing party's bad faith or willfulness.

## II. ANALYSIS

Plaintiff has disclosed certain of his medical providers as non-retained expert witnesses, specifically Dr. Bryan Castro, his former treating spine surgeon, and Dr. Roberta Anderson-Oeser, his treating physical medicine and rehabilitation physician. (ECF No. 335 at 2.) Because Defendant has met its initial burden of demonstrating that Plaintiff did not produce Rule 26 written reports from any of the non-retained treating physicians listed in the Motion, Plaintiff must demonstrate that they are not retained witnesses and, as a result, no reports were required.

Plaintiff has also disclosed a life care planning expert, Aubrey Corwin, and an insurance standard of care expert, attorney Bradley Levin. (*Id.*)

Defendant seeks to exclude various opinions it argues are improperly disclosed, unsupported, unreliable, and unhelpful. (*Id.*)

### A.     Causation Opinions

Defendant seeks to preclude Dr. Castro and Dr. Anderson-Oeser from offering causation opinions at trial. (ECF No. 335 at 6–10.) There is no dispute that both doctors are non-retained experts who did not submit expert reports. Defendant also argues that their causation opinions are unreliable for several reasons. (*Id.* at 10–14.)

"Causation opinions formed as a result the treating physician's own treatment of the plaintiff, and relevant to the treatment that the physician provided, do not require an expert report." *Masa v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 6052622, at *3 (D. Colo. Dec. 21, 2021) (citing *George*, 2020 WL 70424, at *6). "Establishing injury causation requires a showing of both general and specific causation." *Perry v. Auto-Owners Ins. Co.*, 2021 WL 4060633, at *3 (D. Colo. Sept. 7, 2021) (citing *Basanti v. Metcalf*, 35 F. Supp. 3d 1337, 1344 (D. Colo. 2014)). "Specific causation" refers to

whether a particular accident caused the specific injury at issue.  *Id*. "General causation" refers to whether the accident in question is, in the abstract, capable of producing the type of injury suffered.  *Id*.  General causation may be established by such things as epidemiological evidence, *id*., but an expert is not required to cite published studies "in order to reliably conclude that a particular object caused a particular illness," *Hollander v. Sandoz Pharm. Corp*., 289 F.3d 1193, 1211 (10th Cir. 2002) (citing *Turner v. Iowa Fire Equip. Co*., 229 F.3d 1202, 1209 (8th Cir. 2000)).

    1.    <u>Dr. Castro</u>

In the Motion, Defendant explains that according to Plaintiff's Rule 26(a)(2) expert disclosures (ECF No. 336-12), Dr. Castro will testify to the following:

> (i) Cope's "ongoing back and leg pain with a large herniation on his right side at L5-S1" was "caused by" the November 6, 2013 crash (*id*. at 35); (ii) "Cope did not suffer a disc herniation from the 2011 worker's compensation fall at any level" (*id*. at 36.); (iii) "Cope underwent a May 8, 2014 surgery to correct a disc herniation and never impingement . . . as a direct result of the November 6, 2013 crash" (*id*.); (iv) Cope "underwent a revision of that surgery on November 19, 2015" and "each of these surgeries was reasonable and necessary as a result of the November 6, 2013 crash" (*id*. at 33); (v) "Cope's symptoms before the subject collision did not require a subsequent lumbar MRI" and the pain was "significantly different" (*id*. at 36); (vi) all "physical therapy records in the months before the collision" and "all records pertaining to Mr. Cope's 2011 worker's compensation claim," including impairment ratings and work restrictions (*id*.); (vii) that "there is a possibility that the third herniation might heal itself, but if it does not Mr. Cope will need fusion surgery in the future" (*id*.); and (viii) Dr. Castro's "bills for services rendered were reasonable" (*id*. at 37).

(ECF No. 335 at 3–4 (citing ECF No. 336-12 at 1, 35–38).)  Defendant asks the Court to preclude Dr. Castro from opining on causation; that the subject car accident caused any of Plaintiff's alleged injuries or pain; and that the car accident caused Plaintiff's disc

6

herniation or the two lumbar surgeries Dr. Castro performed. (*Id.* at 7.)

Specifically, Defendant points to a June 2, 2017 statement in Plaintiff's medical records in which Dr. Castro stated: "We did note that on his MRI there was an acute disk herniation after the motor vehicle accident of 11/06/13, whereas before there was a small disk bulge and there was definite interval worsening which would go to causality of this motor vehicle accident causing his current symptoms." (*Id.* at 8 (citing ECF No. 336-9 at 86).) As an initial matter, according to Defendant, Dr. Castro's statement is not a causation opinion because he does not opine that it is more likely than not that the subject accident caused Plaintiff's current symptoms. (*Id.*) Moreover, Defendant argues that Dr. Castro's language is "too vague and incomplete to be considered an actual opinion on causation," and his opinion "is not in reference to the two surgeries he performed in 2014 and 2015." (*Id.*)

As Defendant emphasizes in its reply, Plaintiff does not dispute in his response that Dr. Castro's medical records contain no causation opinions. (*See generally* ECF No. 357; ECF No. 366 at 2.) Instead, Plaintiff argues that any Rule 26 disclosure violation is "harmless" because Defendant "chose to elicit opinions" from him at his fact deposition in 2018 "prior to the expert disclosure deadline" and then was "permitted to depose Dr. Castro again in 2022 regarding his causation opinions." (ECF No. 357 at 3–5.) Plaintiff further contends that Defendant "cites no prejudice or surprise arising from Dr. Castro's opinions, but simply seeks to preclude him because Mr. Cope did not pay him to write down the causation opinions he expressed in his 2018 deposition." (*Id.* at 3.)

The Court has thoroughly considered the parties' arguments concerning whether

7

Dr. Castro may offer causation opinions at trial and concludes he may not do so. In *Meiman v. American Family Mutual Insurance Company*, 2022 WL 16951452 (D. Colo. Nov. 15, 2022), United States Magistrate Judge Michael E. Hegarty addressed a related—albeit not identical—situation concerning whether to admit causation opinions offered by a non-retained treating physician who authored no expert report. The Court finds Judge Hegarty's opinion highly persuasive; he wrote,

> if a physician did not independently make a causation opinion as a necessary part of treatment but only in response to a question from counsel or because litigation is pending or contemplated, or formed an opinion relying on a review of another provider's records, then I do not believe the opinion or the record may be admitted under the authority cited above. If the causation opinion was formed under such circumstances, it is not admissible absent compliance with Rule 26(a)(2)(B).

*Id.* at *1. The Court finds that such reasoning applies to Dr. Castro's causation opinions. Despite the fact that Dr. Castro may have discussed causation during his deposition testimony, he did not author an expert report. Deposition testimony is no substitute for Rule 26's disclosure requirements—even for retained experts who *disclose* expert reports. *See Scholl v. Pateder*, 2011 WL 3684779, at *3 (D. Colo. Aug. 22, 2011) ("despite Plaintiffs' contention that disclosure of additional opinions during an expert's deposition cures any failure to disclose the opinion in the expert's report, I note that 'Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony'") (quoting *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008)).

Further, Dr. Castro has not offered general or specific causation opinions, as required under the authority cited above. As the undersigned found in *Masa*, Plaintiff's

8

failure to disclose expert reports containing such causation opinions is "neither substantially justified nor harmless." 2021 WL 6052622, at *6. The subject accident occurred over ten years ago, and this protracted litigation has been ongoing for half a decade. Plaintiff has had more than ample time to disclose an expert report containing causation opinions from Dr. Castro. Whether this failure is merely the product of an "inexpensive end-run attempt around the requirements of Rule 26(a)(2)(B)" matters not. *Meiman*, 2022 WL 16951452, at *1. As Judge Hegarty concluded,

> no physician will be permitted, on the witness stand, to render an opinion to the jury on causation unless a report was submitted under Rule 26(a)(2)(B). A treating physician who previously rendered a causation opinion -- during treatment -- that complies with the standards stated above, and who did not submit a report, may only testify to the historical fact that such an opinion was part of the treatment. The physician may not testify that this is his or her current opinion. Lines like this are necessary to enforce compliance with the Federal Rules.

*Id.* at *2. Accordingly, the Court grants this portion of the Motion and precludes Dr. Castro from offering causation opinions at trial.

However, the Court acknowledges Dr. Castro's statement in Plaintiff's medical records that could possibly be construed as a causation opinion formed during treatment. The Court will not preclude Plaintiff from presenting such a fact at trial. Accordingly, the Court will follow *Meiman* and permit Dr. Castro to testify to the *historical fact* that this opinion was part of the treatment, but precludes him from testifying that this is his *current opinion* given under oath. Given this ruling, the Court directs the parties to submit proposed limiting instructions to be read to the jury at trial which explains in lay terms the above distinction the Court draws as it relates to Dr. Castro's testimony .

2. <u>Dr. Anderson-Oeser</u>

Defendant requests that the Court preclude Dr. Anderson-Oeser from testifying that "a spinal fusion will be necessary in the future as a result of the injuries sustained in the [accident]." (ECF No. 335 at 4 (citing ECF No. 336-12, Pl's. Sept. 2020 F.R.C.P. 26(a)(2) Discls. 2).) Plaintiff does not respond to Defendant's causation arguments regarding Dr. Anderson-Oeser other than to state that he believes Defendant has failed to identify which causation opinions it seeks to exclude and the "only opinions of Dr. Anderson-O[e]ser identified by [Defendant] relate to her opinions regarding the need for future surgery." (ECF No. 357 at 1 n.1.) Plaintiff does not argue that any failure to properly disclose Dr. Anderson-Oeser's causation opinions was harmless or substantially justified. (*See generally id.*; ECF No. 366 at 2.)

Plaintiff's argument is disingenuous at best. It is clear that Defendant seeks to exclude evidence from Dr. Anderson-Oeser that the accident caused the need for Plaintiff's spinal fusion in the future. Like Dr. Castro, Dr. Anderson-Oeser is a non-retained treating physician who did not submit an expert report. Accordingly, the Court grants this portion of the Motion. Dr. Anderson-Oeser is precluded from offering any causation opinions and from testifying that a spinal fusion will be necessary as a result of injuries Plaintiff sustained in the accident.

**B.      Opinions Regarding Future Medical Treatment**

Defendant seeks to preclude Dr. Castro and Dr. Anderson-Oeser from providing opinions on Plaintiff's future medical treatment or surgeries. (ECF No. 335 at 14.) Defendant points out that neither physician's medical records include a recommendation for future surgery. (*Id.* (citing ECF Nos. 336-9, 336-16).) Nevertheless, Defendant explains that Plaintiff states in his Rule 26 expert disclosures

10

that Dr. Castro will testify that "there is a possibility that the third herniation might heal itself, but if it does not Mr. Cope will need fusion surgery in the future." (*Id.*; *see* ECF No. 336-12 at 36.)  Defendant underscores that Dr. Castro has not seen or treated Plaintiff in over five years—since 2018; his opinion does not concern his own treatment of Plaintiff; and it goes beyond the medical records provided.  (ECF No. 335 at 14.)

With respect to Dr. Anderson-Oeser, Plaintiff's Rule 26 disclosures state that Dr. Anderson-Oeser will testify that it is "her opinion that a spinal fusion surgery will be necessary in the future as a result of the injuries sustained in the November 6, 2013 crash."  (ECF No. 336-23 at 34.)  Defendant explains that Dr. Anderson-Oeser approved of the following statement, which appears in a letter prepared for litigation and drafted by Corwin's office staff: "Mr. Cope will likely require a lumbar spine fusion at L5-S1 at some point."  (ECF No. 335 at 4 (citing ECF No. 336-15 at 2, May 2021 Anderson-Oeser letter).)  According to Defendant, Dr. Anderson-Oeser intends to offer testimony concerning the future surgery recommendation contained in Corwin's report/letter; however, Defendant argues that such evidence must be excluded because the recommendation in the letter does not contain any opinion on whether the accident caused the need for this future surgery.  (*Id.* at 15.)

In his response, Plaintiff explains that "Dr. Castro will testify that the standard of care for third herniations is not to perform a third laminectomy, but spinal fusion."  (ECF No. 357 at 7.)  Further, Plaintiff states that Dr. Castro and Dr. Anderson-Oeser will testify that Plaintiff's "need for the surgery depends on a combination of his pain tolerance and whether he suffers additional neurological deficits in the future."  (*Id.* at 7–8.)  Plaintiff "concedes that neither Dr. Castro [n]or Dr. Anderson-O[e]ser should offer

11

opinions that spinal fusion surgery will be 'necessary' in the future." (*Id.* at 8.)  Rather, Plaintiff argues that both doctors are "qualified to testify with respect to clinical standards governing the type of surgery (*i.e.* surgical fusion rather than laminectomy) and the 'conditions' that will necessarily influence [Plaintiff's] decision as to whether or not to obtain surgery (pain tolerance and neurological deficits)." (*Id.*)  Plaintiff argues that he is not required to introduce expert testimony that future surgery is "probable" in order to recover such damages.  (*Id.*)  Plaintiff ignores the fact that neither Dr. Castro nor Dr. Anderson-Oeser's medical records contain any prognosis or future surgical recommendations.  (*See id.*; ECF No. 366 at 5.)  Finally, Plaintiff utterly fails to address the Rule 26 and Rule 37 issues raised by Defendant.

The Court finds United States Chief District Judge Philip A. Brimmer's opinion in *George* instructive.  In excluding prognosis opinions from non-retained expert physicians, Judge Brimmer explained that "[w]hile some cases from this district have permitted non-retained experts to testify as to prognosis, *see Carbaugh v. Home Depot U.S.A., Inc.*, 2014 WL 3543714, at *3 (D. Colo. July 16, 2014); *see also Washington v. Arapahoe Cnty. Dep't of Social Servs.*, 197 F.R.D. 439, 442 (D. Colo. 2000), the majority of decisions require an expert report if the expert intends to opine on prognosis."  *George*, 2020 WL 70424, at *6 (first citing *Kemp v. Webster*, 2012 WL 5289573, at *2 (D. Colo. Oct 26, 2012); then citing *Estate of Grubbs v. Weld Cnty. Sheriff's Office*, 2018 WL 8838810, at *1 (D. Colo. July 20, 2018); then citing *Dedmon v. Continental Airlines, Inc.*, 2015 WL 1040521, at *5 (D. Colo. Mar. 6, 2015); and then citing *Davis*, 2012 WL 882405, at *2).  "The report requirement is based on the fact that a treating physician's expert testimony is limited to his or her observations, diagnosis,

and treatment of a patient, *i.e.*, what he [saw] and did and why he did it." *Id.* (quoting *Estate of Grubbs*, 2018 WL 8838810, at *1 (quotation marks omitted)).  However, "[w]hen a treating physician intends to offer expert testimony not based on his personal observations made during treatment of the patient, a written report is required." *Trejo*, 2007 WL 2221433, at *1.

As in *George*, the Court finds that Dr. Castro and Dr. Anderson-Oeser's opinions concerning Plaintiff's future medical treatment and surgery are not based on what they saw, did, and why they did it during the course of their treatment of Plaintiff, but rather were "formed because there is a lawsuit." *George*, 2020 WL 70424, at *6 (quoting *Kemp*, 2012 WL 5289573, at *2).  The opinions Plaintiff wishes to introduce through Dr. Castro and Dr. Anderson-Oeser opinions concern future treatment that Plaintiff may receive and the medical costs related thereto.  Thus, an expert report is required under Rule 26(a)(2)(B)—a report which neither physician prepared.

Therefore, the Court grants the portion of the Motion seeking to exclude Dr. Castro and Dr. Anderson-Oeser's opinions that Plaintiff will require future medical treatment or surgeries.

As explained above, while Plaintiff concedes in his response that neither physician should offer opinions that spinal fusion surgery will be necessary in the future, he added various types of opinions he believes the two doctors should be able to testify to at trial.  (ECF No. 357 at 7–8.)  The Court has considered these standard of care opinions and determines they are also inadmissible without expert reports.  Specifically, the Court precludes Dr. Castro from testifying that 1) "the standard of care for third herniations is not to perform a third laminectomy, but spinal fusion"; 2) Dr. Castro and

13

Dr. Anderson-Oeser from testifying to Plaintiff's future need for the surgery depending on various factors such as pain tolerance and future neurological deficits; and 3) Dr. Castro and Dr. Anderson-Oeser from testifying with respect to the clinical standards governing the type of surgery and conditions that will influence Plaintiff's future decisions regarding surgery.

**C.     Rule 37**

As to the failure to disclose expert reports concerning causation and prognosis, the Court has considered the aforementioned factors outlined in *Woodworker's Supply* and finds that Plaintiff's failure is neither substantially justified nor harmless.  Plaintiff has had more than ample time to properly disclose the aforementioned providers, produce expert reports, and disclose the necessary information required by Rule 26.  Thus, the exception to Rule 37 will not save these opinions for Plaintiff.

**D.     Testimony Regarding Pre-Accident Physical Therapy and Medical Treatment from 2011 Workers Compensation Fall**

Defendant seeks to preclude Dr. Castro from testifying regarding Plaintiff's pre-accident physical therapy and medical treatment from his 2011 workers compensation fall.  (ECF No. 335 at 15.)  Defendant points out that this evidence must be precluded because Dr. Castro did not provide any of that treatment, and it does not concern his own treatment of Plaintiff or what he saw or observed.  (*Id.*)

Plaintiff fails to substantively respond to this portion of the argument; it appears as though he may have conflated it with that portion of the Motion addressing Dr. Castro's causation opinions.  Instead, Plaintiff explains by way of background that in the course of a deposition of Dr. Castro on November 14, 2018, Defendant used Plaintiff's 2011 MRI and pre-accident physical therapy records to question Dr. Castro with respect

14

to Plaintiff's previous back injury. (ECF No. 357 at 2.)

Upon due consideration, the Court grants this portion of the Motion. Dr. Castro first started treating Plaintiff on March 21, 2014, four months after the accident and three years after Plaintiff's fall through a flight of stairs. (ECF No. 335 at 2–3.) Because Dr. Castro did not provide the physical therapy and medical treatment related to the fall, the Court excludes Dr. Castro from providing testimony regarding the same.

### E. Surgical Opinions

Defendant seeks to exclude Dr. Anderson-Oeser's opinion that "a spinal fusion will be necessary in the future as a result of the injuries sustained in the [accident]." (ECF No. 335 at 15–16 (citing ECF No. 336-23, Pl's. Sept. 2020 F.R.C.P. 26(a)(2) Discls. 2).) Defendant reiterates that such an opinion is inadmissible for the same reasons as her causation opinion, namely because Plaintiff disclosed her as a non-retained expert without a report under Rule 26. (*Id.*) Defendant explains that Dr. Anderson-Oeser's opinion does not "concern [her] own treatment of plaintiff, but rather future treatment that plaintiff may receive" and which Dr. Anderson-Oeser will not even provide because she is not a surgeon. (*Id.*) Defendant further argues that yet another reason to exclude such opinions is that Dr. Anderson-Oeser is not a spine surgeon and is thus not qualified to opine on future, hypothetical lumbar spinal fusion surgeries.

Because the Court has previously excluded Dr. Anderson-Oeser's opinions concerning Plaintiff's future spine surgeries and medical treatment, *see supra*, Part II.B, it denies this portion of the Motion as moot.

### F. Opinions Regarding Medical Bills

A non-retained treating physician's expert testimony must be limited to "his observations, diagnosis and treatment of a patient," based on "what he saw and did and

15

why he did it." *See George*, 2020 WL 70424, at *5 (quoting *Kemp*, 2012 WL 5289573, at *2). When the expert "go[es] beyond his personal observation or treatment of the patient," "the witness is considered retained or employed and will be required to file a written report under Rule 26(a)(2)(B)." *Estate of Grubbs*, 2018 WL 8838810, at *1 (citation and quotations omitted).

Here, Defendant explains that Plaintiff failed to disclose any retained expert or report on the reasonableness of his medical bills. (ECF No. 335 at 17–18.) Nevertheless, Defendant further states that Plaintiff's disclosures indicate that his non-retained treating physicians will testify on this topic. (*Id*.) Plaintiff does not address Defendant's argument in his response. (*See* ECF No. 357; ECF No. 366 at 2 (noting that Plaintiff did not dispute that the reasonableness of medical bills must be disclosed in an expert report, which Plaintiff failed to do).)

In *George*, the court rejected the suggestion that a provider could testify as to the reasonableness and necessity of medical bills if a foundation is laid that the providers have knowledge of their billing practices. *See George*, 2020 WL 70424, at *5. Similarly here, the Court concludes that testimony by Plaintiff's non-retained experts as to the reasonableness and necessity of their medical bills goes beyond their personal observations or treatment of Plaintiff and, as a result, such opinions are "not formed as part of a treating physician's normal occupational duties." *Masa*, 2021 WL 6052622, at *6; *George*, 2020 WL 70424, at *5. Therefore, such opinions should have been disclosed in an expert report that complied with Rule 26.

Thus, the Court grants this portion of the Motion. As a result, Plaintiff's non-retained treating physicians' opinions as to the reasonableness and necessity of

16

Plaintiff's medical bills are excluded. *See Estate of Grubbs*, 2018 WL 8838810, at *3.

**G.    Life Care Plan Opinions**

Defendant moves to exclude testimony regarding line items 2, 4, 6–9, 19–22, 24–25, 28–29, and any other surgery-related treatment in Corwin's May 2021 life care plan. (ECF No. 335 at 18 (citing ECF No. 336-18).) Defendant argues that the identified opinions must be excluded because Corwin failed to reliably apply her stated methodology in forming opinions concerning the cost of future surgical treatment and related care.

In his response, Plaintiff states that he "would concede that a plaintiff seeking future surgical costs needs to introduce expert testimony that future surgical care is indicated, or within the realm of reasonable possibility—a standard he satisfies through Dr. Castro and Dr. Anderson-Oser's opinions." (ECF No. 357 at 9 n.3.)

As explained above, the Court has excluded Dr. Castro and Dr. Anderson-Oeser's testimony concerning future surgery. (*See supra*, Part II.B.) Plaintiff does not state that he has disclosed any other experts to testify regarding his future surgical needs. Accordingly, the Court grants this portion of the Motion and excludes Corwin's opinions concerning future medical expenses for surgical treatment and related care.

**H.    Insurance Industry Standard of Care Opinions**

Defendant seeks to exclude the opinions of attorney Bradley Levin, who will testify for Plaintiff concerning an insurer's standard of care. (ECF No. 335 at 20.) Specifically, Defendant argues that Levin's opinions are based solely on his experience, and have no objective basis.

In response, Plaintiff points out that in his report, Levin identifies ten insurance industry standards that inform his opinions, several of which are based on direct

17

language of the Colorado Unfair Competition-Deceptive Claims Practices Act, Colorado Revised Statutes § 10-3-1104(1)(h)(I–XV).  (ECF No. 357 at 9.)

Having reviewed Levin's report (ECF No. 335-2), the Court agrees with Defendant that Levin could have more precisely tied his opinions to the specific standards he argues Defendant violated.  However, Levin specifically states that in his opinion, Defendant "contravened pertinent portions of Colorado's Unfair Competition-Deceptive Claims Practices Act, including, without limitation, C.R.S. §§ 10-3-1104(1)(h)(II), (III), (IV), (VI), (VII), and (XIV)."  (*Id.* at 10.)  He also cites Regulation 5-1-14, promulgated by the Colorado Division of Insurance.  (*Id.* at 4 n.1.)  Given Levin's reliance on cited portions of Colorado law, the Court concludes that Defendant's arguments go to the weight, rather than the admissibility, of Levin's opinions and denies this portion of the Motion.  Defendant is free to raise these arguments on cross examination.

### III. CONCLUSION

For the foregoing reasons, the Court ORDERS that:

1. The Motion (ECF No. 335) is GRANTED IN PART and DENIED IN PART as set forth above; and

2. The parties are DIRECTED to submit proposed limiting instructions concerning Dr. Castro's causation opinion in his medical records when they submit their other proposed jury instructions as required by the Court's Revised Practice Standards. The parties are strongly encouraged to confer and submit a single, agreed-upon proposed limiting instruction.

Dated this 6th day of December, 2023.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge